FILED
DEC 19 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLLINOIS
E. ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 23-30148-NJR |
| ) | |
| JASON RUSSEL CARAWAY, ) | |
| ) | Title 18, United States Code, |
| Defendant. ) | Section 1343. |

## INDICTMENT

**THE GRAND JURY CHARGES:**

At all times relevant to this indictment, unless otherwise stated:

### Background and Relevant Parties

1. **JASON CARAWAY** was a lawyer licensed to practice in the state of Illinois. He was a partner in the personal injury law firm Caraway, Fisher, & Broombaugh, P.C., in Belleville, St. Clair County, in the Southern District of Illinois.

2. **CARAWAY** engaged in a scheme to embezzle money from his clients and his firm before abruptly abandoning his practice.

### Client Trust Accounts

3. Every law firm must maintain a minimum of two separate bank accounts. First, the firm must have its own business checking account, or operating account, to pay the expenses for its day-to-day operations. Second, the firm must establish one or more client trust accounts to ensure that client funds are not commingled with law firm funds.

4. A lawyer holding client funds has a fiduciary duty to safeguard and segregate those funds from the lawyer's personal and business assets. Being a fiduciary means that the lawyer has

a duty to always act in the client's best interests. For that reason, lawyers must handle their financial affairs according to strict rules designed to protect their clients.

5. Whenever a law firm holds a client's money, they hold those funds in a trust. Law firms will often pool their clients' funds into one checking account, commonly called an "Interest on Lawyer Trust Account." (IOLTA)

6. An IOLTA is an interest-earning trust account used specifically to maintain client money. Using a trust account to hold money like retainers, settlement checks, and court fees ensures that client money is kept separate from the firm's business account. In other words, unearned money held in an IOLTA account cannot be used for the business's operating expenses or a lawyer's personal expenses. Additionally, to maintain ethical and legal standards, lawyers cannot profit off any interest generated by these accounts.

7. Lawyers must prepare and maintain receipt and disbursement journals for all client trust accounts; prepare and maintain contemporaneous ledger records; maintain copies of all accountings made to clients or third persons; and maintain all client trust account checkbook registers, check stubs, bank statements, records of deposit, and checks or other records of debits. Further, lawyers must reconcile their client trust accounts on at least a quarterly basis. Lawyers must maintain their business records for seven years.

8. These recordkeeping rules require that a lawyer account for each individual client's money when pooled in an IOLTA account. Lawyers must maintain strict separation with client funds, and they may never use one client's money to satisfy any other obligation. Separation is achieved by maintaining a separate log or ledger sheet for each client. In this way, the lawyer will be able to account exactly for all money received or paid out on behalf of each client at any given time, as well as know the total balance of all client funds in the trust account.

9. Lawyers may not withdraw fees from their client trust account before earning those fees. Lawyers are not permitted to "borrow" money from their client trust account, even if they intend to pay it back. In short, until legal work is performed – and properly billed – money held in a client trust account is off limits and must be held solely for the client's benefit.

## The Scheme to Defraud

10. **JASON CARAWAY** was a signatory on an IOLTA client trust account ending in 6029, held at Associated Bank ("trust account"). The account was titled "Caraway, Fisher and Broombaugh, P.C. Client Trust Fund."

11. **CARAWAY** was also a signatory on his firm's operating account ending in 6045, similarly held at Associated Bank ("operating account").

12. Transactions administered from these accounts were processed through Green Bay, Wisconsin.

13. **CARAWAY** devised and intended to devise a scheme to defraud his law firm and its clients by embezzling, converting, stealing, and misapplying money and property by materially false and fraudulent pretenses, representations, and promises.

14. **CARAWAY** misappropriated funds through various means, including but not limited to:

    a. improperly transferring money from the client trust account into the firm's operating account where it was spent on various personal and business expenses;

    b. improperly transferring money from the client trust account into the firm's operating account and issuing checks to himself;

    c. accepting settlements without notifying clients or disbursing the client's share of the settlement proceeds;

   d. failing to pay medical lienholders and bills from settlement proceeds and misapplying those funds for other business and personal expenses;

   e. making false statements to conceal his misappropriations;

   f. making lulling payments to clients out of the operating account to conceal prior misappropriations from the trust account;

   g. misapplying retainers without authorization and proper billing; and

   h. forging court documents to improperly obtain client funds.

15.    **CARAWAY** did not prepare and maintain accurate receipt and disbursement journals or accurate contemporaneous ledger records for the client trust account.

## Executing the Scheme to Defraud

16.    The defendant executed the scheme to defraud against his firm and its various clients, including but not limited to:

A. *Stolen Settlement - Ricardo Davis Case*

17.    Washington Park Police Officer Ricardo Davis was killed in the line of duty on October 27, 2018, when he fell from the Poplar Street Bridge during a foot chase. The guardians of two of Davis's surviving minor children hired **CARAWAY's** firm to represent them. These children were the beneficiaries of life insurance proceeds payable from the state of Illinois.

18.    The funds were issued from the State of Illinois on February 8, 2022, in two separate checks in amount of $64,072.18, which were deposited in the firm's client trust account on February 14, 2022, and March 8, 2022, respectively.

19.    On February 15, 2022, a check for $16,000 was transferred from the trust account to the firm's operating account. On February 18, 2022, a check from the operating account was made payable to Jason Caraway in the amount of $1,250 and was deposited into his personal bank

account at Arsenal Credit Union.

20. On March 9, 2022, a check for $14,184.26 was transferred from the trust account to the operating account. On March 8, 2022, a check from the operating account was made payable to Jason Caraway in the amount of $1,500 and was deposited into his personal bank account at Arsenal Credit Union.

21. The remaining funds were also misapplied, and Ricardo Davis's children never received the proceeds of the death benefit from their father's passing.

B. *Forged Court Documents and Stolen Retainer – T.K.*

22. T.K. retained **CARAWAY** to represent him in an $86,000 business dispute. **CARAWAY** told his client that he filed a civil complaint and was attempting to negotiate a settlement. But no settlement occurred, and T.K. continued asking questions about his case.

23. **CARAWAY** ultimately sent T.K. an email containing what appeared to be a court order signed by St. Clair County Circuit Judge Heinz Rudolph dismissing T.K.'s lawsuit. However, the order was a forgery. **CARAWAY** had not filed a case for T.K., and he manufactured the court documents to trick the client into believing that he had litigated on the client's behalf, after taking the retainer payment.

24. The email containing the forged court order travelled in interstate commerce between **CARAWAY's** email server (…@lawcfb.com) and T.K.'s email server (…@yahoo.com).

C. *Conversion and Subsequent Lulling Payments to T.H.*

25. In June of 2022 Caraway & Broombaugh P.C. received a settlement check totaling $85,000 from Gallagher Basset Claims and Hartford Insurance for the benefit of T.H. The check was deposited into the firm's trust account.

26. T.H. was owed $67,000 according to the terms of the settlement order from the

Illinois Worker's Compensation Commission. **CARAWAY** accepted the settlement without disbursing the client's share of the proceeds. Instead of paying T.H. the full amount due in June when the money was received, **CARAWAY** made two small payments to T.H. from the trust account in August and September of 2022. He then made four similar payments in October, November, and December of 2022, and a fifth payment in January 2023, from the firm's operating account. In total, **CARAWAY** misapplied the June settlement proceeds and made seven lulling payments totaling $13,500. This resulted in T.H. being defrauded out of approximately $53,500.

D. *Forged Court Documents and Stolen Special Needs Trust Funds – A.Y.*

27.   **CARAWAY** represented A.Y, who received a personal injury award of approximately $250,000. The client's portion of the recovery totaled $161,755.71, which was placed in a special needs trust administered by Akorne Private Label.

28.   "Special needs" trusts are designed for disabled individuals to ensure that they will remain otherwise eligible for certain government benefits. Assets held in a special needs trust can be used only for certain categories of expenses, and those assets do not affect the person's eligibility for social service programs like Supplemental Security Income (SSI), Medicaid, and Section 8 Housing.

29.   **CARAWAY** was not permitted to directly withdraw money from A.Y.'s special needs trust, so he forged a court order, purportedly signed by St. Clair County Associate Judge Thomas Cannady, to release $15,000 from the special needs trust that he transferred into the law firm's client trust account. A $15,000 check from the special needs trust was deposited into the client trust account on September 20, 2022. Then on September 21, 2022, a check from the client trust account in the amount of $8,174.91 was deposited into the firm's operating account. The same day **CARAWAY** wrote a check payable to himself for $1,000 from the operating account

and deposited the check into his personal account at Arsenal Credit Union.

30. As such, the money was misapplied and did not go to A.Y. or to A.Y.'s guardian.

E. *Stolen Settlement – A.W.*

31. A workers compensation settlement was reached for client A.W., who was due to receive more than $42,000 from their personal injury settlement. But **CARAWAY** misapplied the entire amount and the client received nothing.

F. *Stolen Settlement – M.G.*

32. A workers compensation settlement was reached for client M.G. On August 30, 2022, the law firm's trust account received a check for over $63,000 from Tristar Insurance for the benefit of M.G., but **CARAWAY** misapplied the entire amount and the client received nothing.

G. *Stolen Settlement – D.K.*

33. A severe car crash caused brain damage to D.K. There were two settlement payments in the case, one from the at-fault driver and a second with the client's insurance company. **CARAWAY** misapplied all the settlement proceeds and the client received nothing.

H. *Stolen Settlement – W.A.*

34. A settlement was reached for client W.A. He was due to receive more than $36,000 from the settlement, but **CARAWAY** kept the entire amount and the client received nothing.

I. *Conversion of Settlement Funds for Future Medical Expenses – R.C.*

35. **CARAWAY** represented R.C. and S.C. in connection with a settlement award that required the payment of $125,000 for future medical bills.

36. The client's portion of the settlement was paid; however, **CARAWAY** misappropriated the funds that were to be reserved in the client trust account to pay medical lienholders.

J. *Conversion of Settlement Funds for Medical Expenses – M.G.*

37.     **CARAWAY**'s partner represented M.G. and negotiated a settlement. All the settlement funds were deposited in the firm's client trust account. **CARAWAY** misapplied funds from the more than $23,000 that was reserved in the client trust account to pay medical lienholders.

K. *Conversion of Settlement Funds that were Reserved for Medical Expenses – J.D.*

38.     **CARAWAY**'s partner represented J.D. for injuries sustained in a traffic collision. Counsel obtained two settlements, one from the at-fault driver and a second from the client's insurance company. The settlement proceeds were deposited into the firm's client trust account.

39.     The client received their portion of the settlement fees, but **CARAWAY** misapplied funds from the approximately $40,000 that had been held in the client trust account to pay the remainder of the client's medical bills.

L. *Stolen Settlement Check – C.T.*

40.     **CARAWAY** and his partner represented C.T. in a civil settlement. The insurance check was mailed to Caraway & Broombaugh P.C.

41.     **CARAWAY**'s partner believed that the settlement check was late arriving, so, he contacted opposing counsel only to learn that the settlement check had, in fact, been mailed, received, and negotiated.

42.     On December 1, 2022, **CARAWAY** took C.T.'s settlement check in the amount for $7,500 and deposited the check into the client trust account. On December 2, 2022, **CARAWAY** wrote a check payable to "Caraway & Broombaugh" in the amount of $5,749.22 and deposited it into the firm's operating account. On the same day, **CARAWAY** wrote a check to himself from the operating account and deposited the check into his personal account at Arsenal Credit Union.

M. *Stolen Settlement – S.K.*

43. A settlement was reached for client S.K. In August of 2022 checks in the amount of $38,025.65 and $51,053.26 were deposited into the client trust account. But **CARAWAY** misapplied the funds, and the client only received a check for $2,000.

N. *Conversion of Settlement Funds that were Reserved for Medical Expenses – Y.H.*

44. **CARAWAY** represented Y.H. in connection with a vehicle collision, and he obtained a $25,000 settlement on her behalf. The settlement proceeds were deposited into the firm's client trust account.

45. The client received her portion of the settlement fees, but **CARAWAY** misapplied a portion of the funds that had been set aside in the client trust account to pay the remainder of the client's medical bills.

## COUNT 1-11
## Wire Fraud
## 18 U.S.C. § 1343

Paragraphs 1 through 45 are incorporated and re-alleged.

From on or about March 27, 2019, to on or about January 27, 2023, within St. Clair County, and the Southern District of Illinois,

**JASON RUSSEL CARAWAY,**

defendant herein, committed the offenses set forth in Counts 1- 11, as follows:

1. **JASON RUSSEL CARAWAY** knowingly devised and participated in the scheme to defraud and to obtain money and property by means of false pretenses, representations, or promises, as set forth in this Indictment;

2. He did so knowingly and with the intent to defraud; and

3. For the purpose of executing the scheme described above, and attempting to do

so, **CARAWAY** caused to be transmitted by means of wire in interstate commerce the writing or signals described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| 1. | February 15, 2022 | **CARAWAY** caused $16,000 of insurance proceeds from Ricardo Davis's death to be transferred from Caraway, Fisher, & Broombaugh, P.C.'s client trust account to the firm's operating account at Associated Bank. |
| 2. | February 18, 2022 | **CARAWAY** deposited a check in the amount of $1,250 from Caraway, Fisher, & Broombaugh, P.C.'s operating account at Associated Bank into his personal checking account at Arsenal Credit Union. |
| 3. | March 9, 2022 | **CARAWAY** caused $14,184.26 of insurance proceeds from Ricardo Davis's death to be transferred from the client trust account to the firm's operating account at Associated Bank. |
| 4. | March 8, 2022 | **CARAWAY** caused a check in the amount of $1,500 from Caraway, Fisher, & Broombaugh, P.C.'s operating account at Associated Bank to be deposited into his personal checking account at Arsenal Credit Union. |
| 5. | October 20, 2022 | **CARAWAY** caused an email to be sent at 5:32 pm. from jcaraway@lawcfb.com to tykoconstruction@yahoo.com containing a forged court order. |
| 6. | June 22, 2022 | Caraway & Broombaugh P.C. received a settlement check totaling $85,000 from Gallagher Basset Claims and Hartford Insurance for the benefit of T.H. that **CARAWAY** caused to be deposited into Caraway, Fisher, & Broombaugh, P.C.'s client trust account at Associated Bank without disbursing the client's share of the proceeds. |
| 7. | August 12, 2022 | **CARAWAY** caused a $2,500 lulling payment to be made to T.H. in the form of a check from Caraway, Fisher, & Broombaugh, P.C.'s client trust account at Associated Bank. |
| 8. | October 20, 2022 | **CARAWAY** caused a $1,500 lulling payment to be made to T.H. in the form of a check from Caraway, Fisher, & Broombaugh, P.C.'s operating account at Associated Bank. |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 9. | September 20, 2022 | CARAWAY forged a court order purportedly signed by St. Clair County Associate Judge Thomas Cannady and caused $15,000 to be transferred from a special needs trust (Bank of America Account **7883, Akorne Private Label Management, LLC.) to The Akorne operational account (Bank of America Account **9295), which was then transferred to the Caraway, Fisher, & Broombaugh, P.C.'s client trust account at Associated Bank. |
| 10. | September 21, 2022 | CARAWAY caused $8,174.91 to be transferred from Caraway, Fisher, & Broombaugh, P.C.'s client trust account to the firm's operating account at Associated Bank. |
| 11. | September 21, 2022 | CARAWAY wrote a check payable to himself for $1,000 from Caraway, Fisher, & Broombaugh, P.C.'s operating account and deposited the check into his personal account at Arsenal Credit Union. |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

*[signature]*
STEVEN D. WEINHOEFT
Assistant United States Attorney

*[signature]*
RACHELLE AUD CROWE
United States Attorney

Recommended Bond: Unsecured